UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
LUCIA VLAD-BERINDAN,                    : 14 Civ. 0675 (RJS) (JCF)
                                        :
          Plaintiff,                    :        REPORT AND
                                        :        RECOMMENDATION
     - against -                        :
                                        :
MTA NEW YORK CITY TRANSIT, MARIE        :
STANLEY, ESQ., JEAN DOE, ESQ., and      :
JOHN DOE, ESQ.,                         :
                                        :
          Defendants.                   :
- - - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE RICHARD J. SULLIVAN, U.S.D.J.:

     Lucia Vlad-Berindan brings this employment discrimination
action pro se pursuant to Title VII of the Civil Rights Act of 1964
("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in
Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621 et seq., the
Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§
12112 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794
et seq., alleging that the defendants -- the New York City Transit
Authority (the "Transit Authority"), Marie Stanley, and two other
unnamed attorneys -- failed to hire her because of her race,
national origin, age, and disability.  She further alleges that the
defendants retaliated against her for asserting her rights under
the ADA, posted a deceptive job advertisement, and sought to
incorrectly classify paralegals as independent contractors.  The
defendants move to dismiss all counts pursuant to Rules 12(b)(1)
and 12(b)(6) of the Federal Rules of Civil Procedure.  For the
reasons that follow, I recommend that the plaintiff's complaint be
dismissed without prejudice.

Background[1]

A.   Factual Allegations

Ms. Vlad-Berindan holds an Associate of Applied Science degree in Paralegal Studies and was, at the time relevant to her claims, pursing a Bachelor of Science degree in Legal Studies at the New York City College of Technology ("City Tech").   (Attachment to Complaint for Employment Discrimination ("Compl."), ¶ 1; Affirmation of Lucia Vlad-Berindan in Opposition to Motion to Dismiss dated Sept. 5, 2014 ("Vlad-Berindan Aff.") at 1-2).   She self-identifies as a white person of Romanian national origin.   At the time when the alleged employment action occurred, she was fifty-four years old.   (Complaint for Employment Discrimination ("Compl. Form"), ¶ II(D)).   She also self-identifies as having a disability resulting from a recent surgery, which rendered her unable to lift more than ten pounds of weight or to stand for prolonged periods of time.   (Compl. Form, ¶ II(D); Compl., ¶ 10).

One of the requirements for Ms. Vlad-Berindan's Legal Studies degree was that she complete a 160-hour internship in a law office approved by her school.   (Compl., ¶¶ 1, 6; Vlad-Berindan Aff. at

---

[1]   The background in this case is drawn from Ms. Vlad-Berindan's complaint and supplemented by her affirmation in opposition to the motion to dismiss where the affirmation adds clarity to the originally pled facts.   Although a court is typically confined when considering a motion to dismiss to "the allegations contained within the four corners of [the] complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), pro se pleadings are to be liberally construed, see Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).   When analyzing a pro se pleading, a court may therefore consider factual allegations contained in the plaintiff's opposition papers and other court documents.   See Torrico v. International Business Machines Corp., 213 F. Supp. 2d 390, 399 n.4 (S.D.N.Y. 2002).

2).  City Tech has an arrangement with the Transit Authority (as well as several other "partner" offices) under which the Transit Authority provides internship opportunities to the college's students. (Vlad-Berindan Aff. at 2).  In February 2013, Ms. Vlad-Berindan submitted an application for an unpaid internship to Ms. Stanley, an attorney in the Transit Authority Torts Division (Compl., ¶¶ 2-4; Vlad-Berindan Aff. at 2), intending to fulfill her college requirement through the internship. (Compl., ¶ 6).

On February 13, 2013, Ms. Vlad-Berindan was interviewed by three Transit Authority attorneys -- Ms. Stanley and two other individuals identified as "Jean Doe, Esq." and "John Doe, Esq." (Compl., ¶¶ 3-5, 12).  She does not provide any information regarding the content of her first interview, which was with Ms. Doe. (Compl., ¶ 4).

During her second interview, Ms. Stanley informed Ms. Vlad-Berindan that the office was hiring for two positions, an unpaid internship and a one-year paralegal-contractor position, which was to pay ten dollars per hour. (Compl., ¶ 5; Vlad-Berindan Aff. at 2).  While Ms. Vlad-Berindan initially indicated that she was only applying for the internship, she subsequently agreed during the interview (on Ms. Stanley's suggestion) to be considered for both, with the intention of first completing her 160-hour internship requirement and then continuing to work as a paid paralegal-contractor. (Compl., ¶¶ 5-9).  Ms. Stanley suggested that Ms. Vlad-Berindan would work for fewer than eight hours per day as a paralegal-contractor because the position was for a limited number

of hours per year.  (Compl., ¶ 8).

Ms. Vlad-Berindan disclosed to Ms. Stanley during the interview that she had recently undergone surgery and, as a result, was unable to work more than six hours per day.  (Compl., ¶ 9). She told Ms. Stanley that she planned to work a few hours per day until her health improved.  (Compl., ¶ 10).  She also disclosed that she was not able to lift heavy objects due to the recent surgery.  (Compl., ¶ 10).  Ms. Stanley "[t]hen . . . asked [the] plaintiff when she could start working," and "seemed to like [the] plaintiff."  (Compl., ¶ 11).

Ms. Vlad-Berindan was next interviewed by Mr. Doe.  (Compl., ¶¶ 12-13).  Mr. Doe "asked [] the same questions as the previous two interviewers."  (Compl., ¶ 13).  Additionally, he asked Ms. Vlad-Berindan what country she was from, told her that he had other acquaintances from Romania, and volunteered that he was from Nigeria.  (Compl., ¶ 13).  "Then he asked [Ms. Vlad-Berindan] if she speaks French, and for a while [the] interview was in French." (Compl., ¶ 13).  Ms. Vlad-Berindan states that Mr. Doe "seemed to be very nice" (Compl., ¶ 13), but at one point "turned mad" when discussing the suddenness of his last paralegal's departure, emphasizing that it was important that Ms. Vlad-Berindan be willing to commit to a full year of work (Compl., ¶ 14).  Mr. Doe and Ms. Vlad-Berindan discussed the arrangement proposed by Ms. Stanley, under which Ms. Vlad-Berindan would complete the 160-hour internship prior to beginning her part-time work as a paralegal-contractor.  (Compl., ¶¶ 14-15).

Although Ms. Stanley indicated to Ms. Vlad-Berindan that she would call her about the positions by 5:00 p.m. the day of the interview, she did not contact the plaintiff thereafter. (Compl., ¶ 16). Ms. Vlad-Berindan called Ms. Stanley's office, but did not receive a response. (Compl., ¶ 16). Ms. Vlad-Berindan's classmates later informed her that a new advertisement for positions at the Transit Authority had been posted at their college. (Compl., ¶ 20).

Ms. Vlad-Berindan states that the three lawyers who interviewed her were all "non white" (Compl., ¶ 22), and that "during her interview with the [Transit Authority] she did not see any white employee[s] in the offices where she was, including paralegals she was introduced to" (Compl., ¶ 23). She "believes that after she left the interview, the three non white . . . interviewers decided that [she] was not good enough for them because [she] was[] too weak and disabling [sic] [,] too white and blonde, too over 40 years old [sic] and too East European [] to work[,] learn[, and] practice as an intern paralegal [for] 160 hours in their office" (Compl., ¶ 22), and that "all or some of her interviewer[s] do[] not like white people to work with" (Compl., ¶ 23). Ms. Vlad-Berindan notes that "paralegal[s] need[] to lift and [] sometime[s carry] very heavy files," and alleges that she would have required a rolling shelf and document case to accommodate her disability, had she been hired.[2] (Compl., ¶ 29). She further

---

[2] She does not allege that this issue was addressed during any of her interviews.

alleges that the Transit Authority always intended to hire one
person to fill both the intern position and the paralegal-
contractor position, despite having posted two separate employment
opportunities (Compl., ¶¶ 27, 46), and that they intended to
improperly classify the paralegal-contractor as an independent
contractor to evade taxes (Compl., ¶¶ 27, 48).

     B.   <u>Procedural History</u>

On July 26, 2013, Ms. Vlad-Berindan filed a charge with the
Equal Employment Opportunity Commission ("EEOC") regarding the
defendants' alleged discriminatory conduct.   (Compl. Form, ¶
III(A)).   The EEOC issued a Notice of Right to Sue letter, which
Ms. Vlad-Berindan received on November 1, 2013.   (Compl. Form, ¶
III(B)).   On January 27, 2014, Ms. Vlad-Berindan filed this
lawsuit.   She seeks an award of compensatory damages, punitive
damages, and attorneys' fees.   (Compl., § IV).

<u>Discussion</u>

     A.   <u>Legal Standard</u>

In considering a motion to dismiss, a court must accept as
true all well-pleaded facts alleged in the complaint and draw all
reasonable inferences in the plaintiff's favor.   <u>Erickson v.
Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam); <u>DiFolco v. MSNBC Cable
L.L.C.</u>, 622 F.3d 104, 110-11 (2d Cir. 2010).   A complaint need not
contain detailed factual allegations, but it must contain more than
mere "'labels and conclusions' or 'a formulaic recitation of the
elements of a cause of action.'"   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,
678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544,

555 (2007)).  Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the requirements of Rule 8(a) of the Federal Rules of Civil Procedure.  Id. at 679.

Though a plaintiff may plead facts alleged upon information and belief "where the belief is based on factual information that makes the inference of culpability plausible," Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010), such allegations must be "accompanied by a statement of the facts upon which the belief is founded," Prince v. Madison Square Garden, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006) (internal quotation marks omitted).

Pro se complaints are held to less stringent standards than those drafted by attorneys.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008) (citing Erickson, 551 U.S. at 94).  Pleadings of pro se parties should be read "'to raise the strongest arguments that they suggest.'"  Kevilly v. New York, 410 F. App'x 371, 374 (2d Cir. 2010) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)). Even after the Supreme Court's ruling in Iqbal, which imposed heightened pleading standards for all complaints, pro se complaints are to be liberally construed.  See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).  Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff has clearly failed to meet minimum pleading requirements.  See Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997); accord Leak v. Schriro, Nos. 11 Civ. 8023, 12 Civ. 618, 2013 WL 1234945, at *2 (S.D.N.Y. Feb. 20, 2013),

<u>report and recommendation adopted</u>, 2013 WL 1248620 (S.D.N.Y. March 27, 2013).

    B.  <u>Claims Raised in Opposition to Motion to Dismiss</u>

As an initial matter, I address the substantial factual allegations and several new claims raised for the first time in the plaintiff's affirmation in opposition to the motion to dismiss. The plaintiff alleges, in brief, that subsequent to the filing of this Complaint, she interviewed with the Transit Authority for a similar opportunity to complete a 120-hour internship followed by a one-year contract position as a paralegal. (Vlad-Berindan Aff. at 4-5). She alleges that she was offered both the internship and the paralegal-contractor position, and accepted both positions in March 2014. (Vlad-Berindan Aff. at 4-5). Once she had completed the 120-hour internship, she expected to begin to work as a paid paralegal-contractor, but instead was wished good luck by her supervisor and asked to return her office key. (Vlad-Berindan Aff. at 5-6). Ms. Vlad-Berindan alleges that the position of paralegal-contractor was still open at this point, and claims that the Transit Authority's refusal to hire her for this position constituted "a continuity [sic] of the [earlier] job discrimination." (Vlad-Berindan Aff. at 6). She further claims that the Transit Authority's failure to pay her minimum wage during her internship constituted a violation of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the Thirteenth Amendment. (Vlad-Berindan Aff. at 8-11).

In evaluating the legal sufficiency of a <u>pro se</u> plaintiff's

claims, a court may rely on the plaintiff's opposition papers.  See Crum v. Dodrill, 562 F. Supp. 2d 366, 373 n.13 (N.D.N.Y. 2008) (citing Gadson v. Goord, No. 96 Civ. 7544, 1997 WL 714878, at * 1 n.2 (S.D.N.Y. Nov. 17, 1997)).  "This extension of the usual principles applicable to a Rule 12(b)(6) motion applies to factual allegations that are consistent with those contained in the complaint." Rosado v. Herad, No. 12 Civ. 8943, 2013 WL 6170631, at *3 (S.D.N.Y. Nov. 25, 2013) (citing Richardson v. New York, 10 Civ. 6137, 2012 WL 76910, at *1 n.10 (S.D.N.Y. Jan. 9, 2012)), report and recommendation adopted in part and modified in part on other grounds, 2014 WL 1303513 (S.D.N.Y. March 25, 2014); accord Braxton v. Nichols, No. 08 Civ. 8568, 2010 WL 1010001, at *1 (S.D.N.Y. March 18, 2010) ("[A]llegations made in a pro se plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss."). Further, to the extent claims alleged for the first time in motion papers could have been asserted based on the facts alleged in the complaint, they should be considered.  See Finch v. New York, No. 10 Civ. 9691, 2012 WL 2866253 (S.D.N.Y. May 30, 2012) (finding that while "a plaintiff cannot amend her complaint through an opposition to a motion to dismiss," the court "should read the facts alleged in a pro se plaintiff's complaint for whatever claims may properly be based on such facts").

However, "[e]ntirely new claims [] are not given such liberal treatment." Rosado, 2013 WL 6170631, at *3; accord Bernstein v. City of New York, No. 06 Civ. 895, 2007 WL 1573910, at *10

(S.D.N.Y. May 24, 2007) (finding in pro se case that "[n]ew claims not specifically asserted in the complaint may not be considered by courts when deciding a motion to dismiss" (alteration in original) (internal quotation marks omitted)).  Where a plaintiff's motion papers assert entirely new claims that do not arise out of the facts alleged in the complaint, the court need not consider them. See Bernstein, 2007 WL 1573910, at *10; compare Turner v. Sidorowicz, No. 12 Civ. 7048, 2014 WL 641454, *10 n.11 (S.D.N.Y. Feb. 18, 2014) ("not purport[ing] to substantiate a new claim brought in opposition to the motion to dismiss," but treating such new claim as part of pro se complaint through liberal reading of originally pled facts), and Lang v. New York City Health and Hospitals Corp., No. 12 Civ. 5523, 2013 WL 4774751, at *4 (S.D.N.Y. Sept. 5, 2013) (noting that complaints may not be amended through briefs in opposition to motions to dismiss, but considering new claims because opposition "simply articulates additional claims that [pro se plaintiff's] original complaint could have been construed to allege"), with Conkling v. Brookhaven Science Associates, LLC, No. 10 CV 4164, 2012 WL 2160439, at *6 n.6 (E.D.N.Y. June 12, 2012) (declining to consider claims raised in opposition to motion to dismiss regarding facts that allegedly occurred after amended complaint was filed), and Jones v. Chicago Board of Education, No. 11 C 8326, 2013 WL 1499001, at *2 (N.D. Ill. April 10, 2013) (declining to review allegations of "separate independent acts of discrimination" raised in pro se opposition to motion to dismiss, and noting that only new factual allegations

10

clarifying original claims can be considered).

In this case, the plaintiff has asserted several new claims based not only on newly asserted facts, but on facts that are alleged to have occurred after the Complaint was filed. (Vlad-Berindan Aff. at 4-6). She could not have cognizable FLSA, NYLL or Thirteenth Amendment claims based on the originally pled facts, as the Complaint did not allege that she actually completed any work for the Transit Authority. Further, the new employment discrimination claims alleged in Ms. Vlad-Berindan's opposition to the motion to dismiss are, as Ms. Vlad-Berindan acknowledges, unexhausted because she has not yet received a right-to-sue letter.[3] (Vlad-Berindan Aff. at 6). I therefore do not consider the new claims raised in Ms. Vlad-Berindan's opposition to the motion to dismiss in this report and recommendation, but recommend that Ms. Vlad-Berindan be granted leave to re-plead these claims.[4]

---

[3] Under Title VII, the ADEA, and the ADA, a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter. 42 U.S.C. § 2000e-5(e)-(f) (Title VII exhaustion procedures); 29 U.S.C. § 626(d) (ADEA exhaustion procedures); 42 U.S.C. § 12117(a) (ADA exhaustion procedures); see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001) (Title VII and ADEA); Vargas v. Reliant Realty, No. 13 Civ. 2341, 2014 WL 4446165, at *9 (S.D.N.Y. Sept. 9, 2014) (ADA).

[4] I do, however, caution the plaintiff that she is not likely to prevail on these claims, should she choose to file them. An individual who volunteers her services to a public agency without the expectation of compensation, who is free from employer coercion to perform unpaid services, and who is not already employed by the public agency to render the same type of services, is considered a "volunteer" not subject to the minimum wage requirements of the FLSA. 29 U.S.C. § 203(e)(4)(A); 29 C.F.R. § 553.101. Public agencies therefore have far more latitude than for-profit entities to benefit from the labor of unpaid interns. Cf. Glatt v. Fox Searchlight Pictures, Inc., 293 F.R.D. 516, 530-32 (S.D.N.Y. 2013)

C.   Employment Discrimination Claims

1.   Individual Liability

Ms. Vlad-Berindan asserts employment discrimination claims against Ms. Stanley, Ms. Doe, and Mr. Doe in their individual capacities. (Compl., ¶¶ 33-44). However, it is well-established that individuals may not be held personally liable under Title VII, Patterson v. County of Oneida, New York, 375 F.3d 206, 221 (2d Cir. 2004); under the ADA, Vargas v. Reliant Realty, No. 13 Civ. 2341, 2014 WL 4446165, at *9 (S.D.N.Y. Sept. 9, 2014); under the Rehabilitation Act, Nelson v. City of New York, No. 11 Civ. 2732, 2013 WL 4437224, at *14 (S.D.N.Y. Aug. 19, 2013); or under the ADEA, Parker v. Metropolitan Transportation Authority, 97 F. Supp. 2d 437, 452 (S.D.N.Y. 2000).   The plaintiff's employment discrimination claims against Ms. Stanley, Ms. Doe, and Mr. Doe are therefore barred as a matter of law.

2.   "Employee" Status

The defendants argue that Ms. Vlad-Berindan cannot assert employment discrimination claims under Title VII, the ADEA, the ADA, and the Rehabilitation Act because the position for which she applied was an unpaid internship. (Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Memo.") at 5-7).   The defendants cite case law and statutes establishing that employment

_____

(discussing six criteria for determining whether an intern at a for-profit entity may be unpaid under FLSA and NYLL).  With respect to the employment discrimination claims asserted in the plaintiff's opposition papers, the plaintiff may be guided by the discussion below.

discrimination claims are only available to "employees," and that remuneration is an "essential consideration" of employment status under all four statutes. (Def. Memo. at 5-6 (citing 29 U.S.C. § 793(d) (Rehabilitation Act); Castellano v. City of New York, 142 F.3d 58, 69 (2d Cir. 1998) (ADA); O'Connor v. Davis, 126 F.3d 112, 116 (2d Cir. 1997) (Title VII); EEOC v. Johnson & Higgins, Inc., 91 F.3d 1529, 1538 (2d Cir. 1996) (ADEA)).   While the defendants acknowledge that Ms. Vlad-Berindan "expressed interest in a paid, part-time position during her series of interviews," they contend that she "had not applied for that position and did not interview for that position."  (Def. Memo. at 7).

Ms. Vlad-Berindan alleges that while she originally submitted her resume with the goal of being considered for an unpaid internship (Compl., ¶¶ 1-3), she was invited to also be considered for a paid paralegal-contractor position, and accepted that invitation (Compl., ¶¶ 5-9).   The salary for the paralegal-contractor position was to be ten dollars per hour. (Vlad-Berindan Aff. at 2).  Much of Ms. Vlad-Berindan's interview with Ms. Stanley focused on the paralegal-contractor position (Compl., ¶¶ 7-8), and Mr. Doe "did not mention anything about the internship plaintiff was seeking," but focused his interview questions solely on the paralegal-contractor position (Compl., ¶ 14).  Accepting as true all well-pleaded facts alleged in the Complaint and drawing all reasonable inferences in the plaintiff's favor, Ms. Vlad-Berindan has sufficiently pled that she applied for employment as defined under Title VII, the ADEA, the ADA, and the Rehabilitation Act and

13

that she is entitled to the protections of those statutes.  The question remains, however, whether she has stated plausible employment discrimination claims against the Transit Authority on which relief could be granted.

### 3.   Title VII Claims

Ms. Vlad-Berindan alleges that the defendants refused to hire her because of her race in violation of Title VII. (Compl., ¶¶ 22, 34).  Based on her allegation that the defendants decided she was not only "too white" but also "too East European" (Compl., ¶ 22), I read the Complaint to also assert a Title VII claim based on national origin.

In determining whether a claim for employment discrimination survives a motion to dismiss, the Court is guided by the elements required to make out a prima facie case.  These are: (1) membership in a protected class; (2) qualification for the position; (3) suffering of an adverse employment action; and (4) circumstances giving rise to an inference of discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Weinstock v. Columbia University, 224 F.3d 33, 42 (2d Cir. 2000).  In order to sustain a discrimination claim based on a failure to hire, "a plaintiff must allege that she applied for an available position for which she was qualified and was rejected under circumstances giving rise to an inference of unlawful discrimination." Wang v. Phoenix Satellite Television U.S., Inc., 976 F. Supp. 2d 527, 537 (S.D.N.Y. 2013) (citing Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

However, "[t]he prima facie case under <u>McDonnell Douglas</u> [] is an evidentiary standard, not a pleading requirement." <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 510–11, 514 (2002); <u>see also</u> <u>Boykin v. KeyCorp.</u>, 521 F.3d 202, 212 (2d Cir. 2008).   Accordingly, "a plaintiff alleging employment discrimination need not plead facts establishing a plausible prima facie case of discrimination to survive a motion to dismiss." <u>Schwab v. Smalls</u>, 435 F. App'x 37, 40 (2d Cir. 2011).   Under the pleading standard established in <u>Swierkiewicz</u>, an employment discrimination claim need only "be facially plausible and must give fair notice to the defendants of the basis for the claim." <u>Barbosa v. Continuum Health Partners, Inc.</u>, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (internal quotation marks omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678; <u>accord</u> <u>Turkman v. Ashcroft</u>, 589 F.3d 542, 546 (2d Cir. 2009).   "For this conclusion to be drawn, a plaintiff must allege facts that allow the court in substance to infer elements of a <u>prima facie</u> case." <u>King v. U.S. Security Associates</u>, No. 11 Civ. 4457, 2012 WL 4122025, at *5 (S.D.N.Y. Aug. 22, 2012) (collecting cases).

In this case, Ms. Vlad-Berindan has alleged facts sufficient for the court to infer the first three elements of the prima facie case required under Title VII.   She alleges (1) that she is white and Romanian (Compl. Form, ¶ II(D)); (2) that she holds an

15

Associate of Applied Science degree in Paralegal Studies, was pursing a Bachelor of Science degree in Legal Studies when she applied for the position (Compl., ¶ 1), and was in fact invited to apply for the paralegal-contractor position in addition to the unpaid internship based on these qualifications (Compl., ¶¶ 5-6); and (3) that she was not hired.  However, the circumstances Ms. Vlad-Berindan alleges do not give rise to an inference of unlawful discrimination based on race or national origin.

In support of her race discrimination claim, Ms. Vlad-Berindan alleges that all three interviewers were "non white" and that during her interview, she "did not see any white employee[s], including paralegals she was introduced to." (Compl., ¶¶ 22-23). While the demographics of an office may be relevant in a failure-to-hire employment discrimination case, they are not sufficiently pled in this case to give rise to an inference of unlawful discrimination.  Courts have dismissed failure-to-hire cases in which plaintiffs have alleged significant under-representation of members of their protected classes in the defendant-employers' staffs. See, e.g., Lott v. Kmart, No. 13 CV 990, 2014 WL 1884406, at *1 (S.D. Ohio May 9, 2014) (finding allegation that pro se male plaintiff on two occasions observed that all cashiers working at defendant store were women insufficient to raise inference of sex discrimination); Chandler v. University of Pennsylvania, 927 F. Supp. 2d 175, 179 (E.D. Pa. 2013) (finding plaintiff's statistical evidence of the under-representation of African Americans in defendant university's graduate student body and faculty

insufficient to plausibly claim intentionally discrimination based on race).  The fact that the defendants "have hired people who are of a different race . . . from [Ms. Vlad-Berindan] does not suggest that the [] [d]efendants failed to hire her on account of her race . . . ."  Riddle v. Citigroup, 13 Civ. 6833, 2014 WL 2767180, at *3 (S.D.N.Y. May 29, 2014).  Ms. Vlad-Berindan does not indicate that any of her interviewers were hostile towards her.  (Compl., ¶¶ 11, 13).  Although she alleges that the position remained posted on her college campus some time after her interview (Compl., ¶ 20), she does not allege that the person who was ultimately hired was not white.  While "[i]n failure to hire cases, a plaintiff may demonstrate circumstances giving rise to an inference of discrimination by showing that the defendant continued to solicit applications for the position applied to and hired someone outside of the plaintiff's protected class," Ghosh v. New York City Department of Health, 413 F. Supp. 2d 322, 332 (S.D.N.Y. 2006) (internal quotation marks omitted), the fact that a position remained open for some time is not on its own sufficient to raise an inference of discrimination.  Because Ms. Vlad-Berindan has not alleged facts sufficient to raise an inference of race-based discrimination, I recommend that the Title VII claim premised on race be dismissed.

The only facts Ms. Vlad-Berindan pleads in relation to her national origin claim are that Mr. Doe, "who seemed to be very nice," asked her what country she was from, "told [her] he knew other people from her country, and [] told [her] that he is from

Nigeria." (Compl., ¶ 13). The Complaint indicates that after this exchange, Mr. Doe continued to interview Ms. Vlad-Berindan about whether she could commit to working for a full year, and discussed the possibility that she would be hired for the internship and paralegal-contractor position, to be completed successively. (Compl., ¶¶ 14-15). These facts do not raise an inference of discrimination. Accordingly, I recommend that the Title VII claim premised on national origin also be dismissed.

     4.  <u>ADEA Claim</u>

Under the ADEA, it is illegal for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To qualify for protected status under the ADEA, a plaintiff must be "at least 40 years of age." 29 U.S.C. § 631(a); <u>Liburd v. Bronx Lebanon Hospital Center</u>, No. 07 Civ. 11316, 2008 WL 3861352, at *6 (S.D.N.Y. Aug. 19, 2008). To establish a disparate-treatment claim under the ADEA, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision. <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S. 167, 175-76 (2009). As in the Title VII context, the <u>prima facie</u> elements provide only a guide-post for the adjudication of a motion to dismiss, not a pleading requirement. See <u>Fitzgerald v. Signature Flight Support Corp.</u>, No. 13 Civ. 4026, 2014 WL 3887217, at *4 (S.D.N.Y. Aug. 5, 2014); <u>see also Swierkiewicz</u>, 534 U.S. at 508. Thus, "while an ADEA plaintiff need

18

not plead but-for causation, his complaint must contain sufficient facts to make plausible the conclusion that but for his age, he would not have suffered the challenged action." Williams v. Addie Mae Collins Community Service, No. 11 Civ. 2256, 2012 WL 4471544, at *3 (S.D.N.Y. Sept. 27, 2012) (internal quotation marks and brackets omitted); accord Fagan v. U.S. Carpet Installation, Inc., 770 F. Supp. 2d 490, 497 (E.D.N.Y. 2011).

Ms. Vlad-Berindan was fifty-four years old when she interviewed with the Transit Authority in February 2013 (Compl. Form, ¶ II(D)), and therefore qualified for protection under the ADEA.  However, she does not allege any facts in support of her conclusory statement that she was not hired because the "interviewers decided that [she] was . . . too over 40 years old . . . ." (Compl., ¶ 22).  She therefore has not raised an inference of age discrimination.  See Munoz-Nagel v. Guess, Inc., No. 12 Civ. 1312, 2013 WL 1809772, at *7 (S.D.N.Y. April 30, 2013) (dismissing ADEA claim where plaintiff alleged only that defendant preferred to hire younger applicants and that she believed younger interviewees were hired instead of her).  I therefore recommend that the ADEA claim be dismissed.

### 5.   ADA and Rehabilitation Act Claims

Ms. Vlad-Berindan alleges both that the defendants refused to hire her because of her disability in violation of the ADA and the Rehabilitation Act and that they retaliated against her for exercising her rights under the ADA.

a.   <u>Failure to Hire</u>

The ADA prohibits discrimination against any "qualified individual on the basis of disability," including with respect to hiring decisions. 42 U.S.C. § 12112(a).  A prima facie case of discrimination under the ADA requires showing that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA; (3) the plaintiff is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of her disability.  <u>See</u> <u>Rios v. Department of Education</u>, 351 F. App'x 503, 505 (2d Cir. 2009).  The Rehabilitation Act likewise bars employment discrimination based on disability, as defined in the ADA.   29 U.S.C. § 791(g).   An individual may qualify as "disabled" by showing that (1) she has a disability, defined as "a physical or mental impairment that substantially limits one or more major life activity," 42 U.S.C. § 12102(1)(A); (2) she has "a record of" a disability, 42 U.S.C. § 12102(1)(B); or (3) she is "regarded as having" a disability, 42 U.S.C. § 12102(1)(C).  As in the Title VII context, these prima facie elements "provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible."  <u>Idlisan v. New York City Health and Hospitals Corp.</u>, No. 12 Civ. 9163, 2013 WL 6049076, at *4 (S.D.N.Y. Nov. 15, 2013) (internal quotation marks omitted).

Here, Ms. Vlad-Berindan alleges that she is unable to lift weights in excess of ten pounds or to stand for prolonged periods

of time due to a recent surgery. (Compl. Form, ¶ II(D); Compl., ¶ 10). As "lifting" is included in the ADA's definition of "major life activities," see 42 U.S.C. § 12102(2)(A), Ms. Vlad-Berindan qualifies as having a disability on these facts.  The plaintiff alleges that she informed Ms. Stanley that "due to her surgeries, she could not lift heavy things" (Compl. ¶ 10) and could not work for more than six hours per day (Compl., ¶ 9). She does not allege that Ms. Stanley responded negatively to either of these disclosures.  Rather, she states that Ms. Stanley "[t]hen . . . asked [the] plaintiff when she could start working." (Compl., ¶ 11).  The mere fact that an employer was aware of an applicant's disability when deciding not to hire her is insufficient to raise an inference of discrimination.  See Kruger v. Hamilton Manor Nursing Home, ___ F. Supp. 2d ___, ___, 2014 WL 1345333, at *4 (W.D.N.Y. 2014); Mitchell v. New York City Transit Authority, 856 F. Supp. 2d 478, 484 (E.D.N.Y. 2012).  While Ms. Vlad-Berindan does make a general allegation that paralegals sometimes "need[] to lift and carry . . . very heavy files," and states that she would have needed a rolling shelf and document case to accommodate her disability (Compl., ¶ 29), she does not allege that this task or her need for accommodation was discussed in any of her interviews. Because the facts alleged are not sufficient to raise an inference of discrimination based on disability, the ADA and Rehabilitation Act failure-to-hire claims should be dismissed.

> b.   Retaliation

Ms. Vlad-Berindan also raises a retaliation claim under the

ADA.  (Compl., ¶¶ 43-44).  The ADA prohibits retaliation against individuals who have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]."  42 U.S.C. § 12203(a).  In order to establish a prima facie case of retaliation under the ADA, a plaintiff must show "'that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action.'"  Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000) (quoting Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999)).

Ms. Vlad-Berindan claims that the conduct described in the Complaint -- that is, the failure to hire her -- "constitutes retaliation against the Plaintiff because she confessed her medical condition protected by the ADA."  (Compl., ¶ 44).  However, the disclosure Ms. Vlad-Berindan made does not itself qualify as "protected activity" within the meaning of the Act.  42 U.S.C. § 12203(a).  While Ms. Vlad-Berindan has since engaged in "protected activity" by making a charge to the EEOC and filing the instant case, such activity occurred after the alleged adverse employment action.  Ms. Vlad-Berindan's retaliation claim should therefore be dismissed.

D.   Deceptive Advertising Claim

In addition to her employment discrimination claims, Ms. Vlad-

Berindan brings a claim for "Deceptive and Prohibited Job Ads" (Compl. at 8), claiming that the Transit Authority always intended to hire one person for both the internship and the paralegal-contractor position (Compl., ¶ 27), and that the separate advertisements for the two positions "constitute [a] violation of federal [l]abor [l]aws, and a discriminatory practice" (Compl. ¶ 46).

It is entirely unclear from the Complaint (and not clarified by the opposition papers) which statute Ms. Vlad-Berindan is referencing.  The new claims raised in her opposition to the motion to dismiss suggest that she may have intended to claim, under the FLSA, that the Transit Authority would be obligated to pay the minimum wage during the internship portion of this arrangement. However, she would not have standing to raise such a claim, as she does not allege that she actually worked for the Transit Authority as an intern.  Alternatively, though she references "federal labor law," it is possible that she intended to bring a false advertising claim under New York General Business Law § 350-a, which prohibits "advertising . . . of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."  Gen. Bus. Law § 350-a(1).  However, this claim would also be barred, as an employer may only be liable for false advertising "if the aggrieved person has [] suffered actual pecuniary damage as a result of the misleading advertising of an employment opportunity."  Gen. Bus. Law § 350-a(2).  Even if the advertising scheme alleged by Ms. Vlad-Berindan would constitute

false advertising, she has not alleged that she experienced any pecuniary damage as a result.  This claim should therefore be dismissed.

       E.   <u>Employee Classification Claim</u>

      Finally, Ms. Vlad-Berindan asserts a claim of "Employee[] Misclassification," alleging that the defendants sought to classify paralegal-contractors as independent contractors to avoid contributing "to the Treasury, the Social Security, and Medicare funds, as well as to state unemployment insurance and workers compensation funds."  (Compl. at 8).  Like her deceptive job advertisement claim, this claim is not premised on identifiable federal or state law.  Further, Ms. Vlad-Berindan has not alleged that she actually worked for the Transit Authority as a paralegal-contractor.  This claim should therefore be dismissed.

       F.   <u>Leave to Re-Plead</u>

      The Second Circuit has held that a <u>pro se</u> litigant should be afforded at least one opportunity to "amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." <u>Gomez v. USAA Federal Savings Bank</u>, 171 F.3d 794, 796 (2d Cir. 1999) (per curiam).  Because there is some prospect, however slim, that the plaintiff could state a valid claim, she should be given an opportunity to amend her complaint.

      The plaintiff is cautioned that her amended complaint, should she choose to file one, must state plausible claims on which relief

may be granted to avoid dismissal.  Facts alleged upon information and belief must be "accompanied by a statement of the facts upon which the belief is founded." <u>Prince</u>, 427 F. Supp. 2d at 385 (internal quotation marks omitted).  Therefore, while the plaintiff may plead that she <u>believes</u> she was not hired based on her race, national origin, age, or disability, she must also allege facts that raise a plausible inference of each type of discrimination alleged in support of such a belief.  Further, the plaintiff should limit any claims under the FLSA and the NYLL to periods of time during which she actually completed work for the defendants.

Finally, the plaintiff is cautioned that her amended complaint must comply with the strictures of Rule 11 of the Federal Rules of Civil Procedure, including the requirement that all "factual contentions have evidentiary support" or be "likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

<u>Conclusion</u>

For the foregoing reasons, I recommend that the defendants' motion to dismiss (Docket no. 11) be granted without prejudice to the filing of an amended complaint.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Richard J. Sullivan, Room 2104, 40 Foley Square, New York, New York 10007, and

to the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.   Failure to file timely objections will preclude appellate review.


                         Respectfully submitted,


                         _____
                         JAMES C. FRANCIS IV
                         UNITED STATES MAGISTRATE JUDGE

Dated:      New York, New York
            October 7, 2014



Copies mailed this date:

Lucia Vlad-Berindan
P.O. Box 863149
Ridgewood, NY 11386

Robert K. Drinan, Esq.
NYC Transportation Authority
130 Livingston Street
Brooklyn, NY 11201